DECISION AND JUDGMENT ENTRY
{¶ 1} Diane R. Pearson ("Mother"), NKA Diane Gilbert, appeals the judgment of the Meigs County Common Pleas Court modifying the child support obligation of Bartow Allen Pearson ("Father"), finding Mother in contempt of court, and modifying the visitation schedule for the parties' minor children. Mother contends that the trial court lacked jurisdiction to make parenting determinations because neither the parties nor the children currently reside in Ohio. We agree, because we find that: (1) the trial court abused its discretion in exercising jurisdiction over Father's contempt motion, and modifying the parties visitation schedule as a sanction for the contempt, where the record does not contain any evidence to support the trial court's exercise of jurisdiction over parenting determinations under R.C. 3109.22(A); and (2) the trial court patently and unambiguously lacked jurisdiction to hear said motion under Section 1738A(d), Title 28, U.S. Code, and the Ohio Supreme Court's judgment in State ex rel. Seaton v. Holmes, 100 Ohio St.3d 265,2003-Ohio-5897. Additionally, we find that, pursuant to R.C. 3115.07, the trial court lacked continuing, exclusive jurisdiction to hear Father's motion to modify child support because neither the parties nor the children continue to reside in Ohio. Accordingly, we reverse the judgment of the trial court and remand this cause for further proceedings consistent with this opinion.
 I. {¶ 2} The parties married in Athens County, Ohio on November 16, 1985. Two children were born as issue of the marriage, specifically, Brandon Pearson (D.O.B. 1/15/1989), and Demetria Pearson (D.O.B. 3/5/1991). The parties terminated their marriage by dissolution on May 9, 1994. At that time, Mother and the children resided in Meigs County, Ohio, and Father resided in Point Pleasant, West Virginia.
 {¶ 3} Pursuant to the terms of the separation agreement incorporated into the dissolution decree, Mother was designated the residential parent and legal custodian of the minor children. Father was granted visitation pursuant to the Meigs County standard visitation guideline and was ordered to pay guideline child support.
 {¶ 4} In December 2002, Mother and the children moved to Pennsylvania. Father testified that he was unable to locate Mother and the children until December 2003. On March 23, 2004, Father filed a motion to show cause why Mother should not be found in contempt for: (1) failing to give him her address when she moved to Pennsylvania; and (2) effectively denying him visitation with the children after she moved. Father sought an order finding Mother in contempt and an order granting him extended visitation with the children to make up for his lost visitation time. Additionally, Father filed a motion to modify his child support obligation due to a change in his employment.
 {¶ 5} The record reflects that the clerk's attempt to serve Mother by certified mail failed and that the clerk reissued service by standard U.S. Mail. The trial court conducted a hearing upon Father's motions on July 21, 2004. Mother did not appear at the hearing.
 {¶ 6} After hearing Father's testimony, the trial court issued a judgment entry, wherein it stated "[t]his Court has continuing jurisdiction over the subject matter and parties of this action." The trial court then modified Father's child support obligation to $50 per month plus a processing charge, and found Mother in contempt of court for failing to: (1) comply with the court's previous visitation order; and (2) provide the court with her current mailing address. The trial court sentenced Mother to serve 30 days in jail, suspended on the condition that she permit Father to regularly exercise his visitation with the children. The court also directed that a bench warrant issue for Mother's arrest for her failure to appear at the July 21, 2004 hearing.
 {¶ 7} Additionally, the trial court modified Father's visitation to the court's standard long distance visitation schedule and ordered Mother to provide the children's transportation to the Meigs County, Ohio Sheriff's Department to commence Father's visitation. Pursuant to the judgment entry, Father was to have visitation with the children beginning August 1, 2004, and continuing until the day before their return to school. Each subsequent year, the court ordered Father's six-week summer visitation to begin one week after the completion of their school year.
 {¶ 8} Mother appeals, raising the following assignment of error: "THE MEIGS COUNTY COMMON PLEAS COURT DOES NOT HAVE JURISDICTION IN THIS MATTER AND ERRED WHEN IT ASSUMED JURISDICTION."
 II. {¶ 9} In her sole assignment of error, Mother contends that the trial court lacked subject matter jurisdiction to hear Father's motion for contempt and to modify the court's previous child visitation order. Specifically, Mother contends that pursuant to Ohio's version of the Uniform Child Custody Jurisdiction Act ("UCCJA"), R.C. 3109.21 et seq.,[1] the Meigs County Court of Common Pleas lacks subject matter jurisdiction to make parenting determinations regarding the parties' minor children.[2]
 {¶ 10} It is well-settled law that the court that renders a decree of dissolution retains continuing jurisdiction over matters relating to the custody, care, and support of the parties' minor children. Loetz v.Loetz (1980), 63 Ohio St.2d 1, 2; Van Divort v. Van Divort (1956),165 Ohio St. 141, at paragraph one of the syllabus. However, when the parties move outside of Ohio, the trial court must look to Ohio's version of the UCCJA to determine whether it may exercise that jurisdiction. InMatter of Ghadar (Aug. 28, 1995), Hocking App. No. 94-CA-15, citingGurtner v. Gurtner (1994), 94 Ohio App.3d 236, 239; Patten v. Patten
(Apr. 1, 1991), Brown App. No. CA-90-09-009. "The determination of whether a subject matter jurisdiction may be exercised under the UCCJA is dedicated to the sound discretion of the trial court." Ghadar, citingState ex. rel Aycock v. Mowery (1989), 45 Ohio St.3d 347, 352; Bowen v.Britton (1993), 84 Ohio App.3d, 473, 478. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemorev. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 11} R.C. 3109.22(A) provides: "No court of this state that has jurisdiction to make a parenting determination relative to a child shall exercise that jurisdiction unless one of the following applies: (1) This state is the home state of the child at the time of the commencement of the proceeding, or this state had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a parent and legal custodian of a child * * * or is absent from this state for other reasons, and a parent or person acting as parent continues to live in this state; (2) It is in the best interest of the child that a court of this state assumes jurisdiction because the child and his parents, or the child and at least one contestant have a significant connection with this state, and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; (3) The child is physically present in this state and either has been abandoned or it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; (4) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with division (A)(1), (2), or (3) of this section or a court in another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to make a parenting determination relative to the child, and it is in the best interest of the child that this court assume jurisdiction."
 {¶ 12} Mother contends that none of the four criteria for exercising jurisdiction under R.C. 3109.22(A) exists. Specifically, Mother notes that Father resided in West Virginia at the time he filed his motions and continues to reside there. Additionally, Mother states that she and the children moved to Pennsylvania in December 2002 and continue to reside there.[3] The record also reflects that the trial court was aware that both parties and the children resided outside of Ohio at the time of the hearing. Thus, Mother asserts that Ohio cannot qualify as the children's home state pursuant to R.C. 3109.22(A)(1).
 {¶ 13} Mother does not specifically address subsections (2) through (4) of the R.C. 3109.22(A). We note that the record contains no evidence tending to satisfy any of the criteria enumerated in the statute, save for the fact that Father maintains some connection to the state by working in Gallipolis, Ohio. Accordingly, we conclude that the trial court abused its discretion in exercising jurisdiction over Father's contempt motion.
 {¶ 14} Furthermore, we note that even if the trial court could properly exercise jurisdiction pursuant to Ohio's version of the UCCJA, the Ohio Supreme Court has held that when Ohio's version of the UCCJA conflicts with the Parental Kidnapping Prevention Act ("PKPA"), Section 1738A, Title 28, U.S. Code, the PKPA prevails. State ex rel. Seaton v.Holmes, 100 Ohio St.3d 265, 2003-Ohio-5897, at ¶ 16. (Citations omitted.) See, also, Justis v. Justis (1998), 81 Ohio St.3d 312, 317.
 {¶ 15} The PKPA "imposes a duty on the States to enforce a child custody determination entered by a court of a sister State if the determination is consistent with the provisions of the Act." Thompson v.Thompson, 484 U.S. 174, 175-76, 98 L. Ed. 2d 512, 108 S. Ct. 513 (1988); Section 1738A(a), Title 28, U.S. Code. In enacting the PKPA, Congress intended to: (1) address the problem of conflicting state custody determinations resulting from inconsistent versions of the UCCJA adopted by the various states; and (2) provide for nationwide enforcement of custody orders. Thompson, 484 U.S. at 181.
 {¶ 16} The PKPA provides that a state court that has made a custody or visitation determination consistent with the Act retains continuing and exclusive jurisdiction as long as: (1) the court has jurisdiction under state law; and (2) the state remains the residence of the child or of any contestant. Section 1738A(d), Title 28, U.S. Code. See also, Seaton
at ¶ 11-12.
 {¶ 17} Here, the record reflects, and the parties do not dispute, that neither the parties, nor the children, continue to reside in Ohio. Thus, even if Ohio's version of the UCCJA would allow the trial court to exercise jurisdiction over a parenting determination, the PKPA makes it clear that the trial court patently and unambiguously lacked jurisdiction to hear Father's motion for contempt. Seaton at ¶ 12 (Holding that the trial court lacked jurisdiction over post-decree motions for contempt and termination of shared parenting under the PKPA where the parties and the children were living outside of Ohio when the motions were filed.) Accordingly, we sustain Mother's sole assignment of error. This result is consistent with the preeminent purposes of the UCCJA — to avoid jurisdictional conflict, to promote cooperation between state courts in custody matters, and to ensure that the state in the best position to determine the child's best interest is the state making custody determinations. Seaton at ¶ 17, citing Justis, supra at 318; In reGuardianship of Wonderly (1981), 67 Ohio St.2d 178, 180.
 III. {¶ 18} Next, we address the trial court's jurisdiction to hear Father's motion to modify his child support obligation. Mother's sole assignment of error — that the trial court did not have jurisdiction and erred when it assumed jurisdiction — is broad enough, and appears to encompass the trial court's exercise of jurisdiction over Father's motion to modify child support. However, in her brief, Mother fails to address the jurisdictional issues related to Father's motion to modify child support. Although neither party has specifically argued the issue, an appellate court may raise the issue of lack of subject matter jurisdiction sua sponte. State ex rel. White v. Cuyahoga Metro. Hous. Auth. (1997),79 Ohio St.3d 543, 544.
 {¶ 19} Ohio's version of the Uniform Interstate Family Support Act ("UIFSA"), R.C. 3115.01, et seq., governs continuing, exclusive jurisdiction over child support orders. Under that statute, an Ohio court "has continuing, exclusive jurisdiction over a child support order it issues as long as the obligor, individual obligee, or child subject to the child support order is a resident of this state, unless all of the parties who are individuals have filed written consents with the tribunal of this state for a tribunal of another state to modify the order and assume continuing, exclusive jurisdiction." R.C. 3115.07(A).
 {¶ 20} Under the statute, an Ohio Court may also lose continuing, exclusive jurisdiction over a child support order it has issued if a tribunal of another state modifies the Ohio order pursuant to that state's law, if that law is substantially similar to Ohio's enactment of UIFSA. R.C. 3115.07(B). Once another state assumes continuing, exclusive jurisdiction over an Ohio child support order, an Ohio court only retains jurisdiction to: (1) enforce support amounts accruing before the modification of the order; (2) enforce non-modifiable aspects of the original order; and (3) provide relief for violations of the order that occurred before the date of the modification. R.C. 3115.07(C).
 {¶ 21} Here, the trial court proceeded to modify its previous child support order despite the fact that neither the parties, nor the children, continue to reside in Ohio. Therefore, the trial court did not possess and could not exercise continuing, exclusive jurisdiction under R.C. 3115.07(A). Furthermore, it does not appear from the record before us that another state's court has assumed continuing, exclusive jurisdiction either by the written consent of the parties, or by acting to modify the previous Ohio child support order under a statute substantially similar to R.C. 3115.48.[4]
 {¶ 22} R.C. 3115.07 does not explicitly define the status of an order after the issuing court loses continuing, exclusive jurisdiction and another forum meets the requirements of UIFSA to exercise modification jurisdiction. See, Sowald Morganstern, Domestic Relations Law (2005), Section 23:29. Section 205 of the 1996 uniform act, upon which the General Assembly based Ohio's version of UIFSA, is substantially similar to R.C. 3115.07. See, UIFSA (1996), Section 205. Commentary to Section 205 of the uniform act states that, except in narrowly defined circumstances, the issuing tribunal retains continuing, exclusive jurisdiction over a child support order. The commentary then states, in relevant part: "Just as subsection (a)(1) defines the retention of continuing, exclusive jurisdiction, by clear implication the subsection also defines how jurisdiction to modify may be lost. That is, if all the relevant persons — the obligor, the individual obligee, and the child — have permanently left the issuing State, the issuing State no longer has an appropriate nexus with the parties or child to justify exercise of jurisdiction to modify. Further, the issuing tribunal has no current information about the factual circumstances of anyone involved, and the taxpayers of that State have no reason to expend public funds on the process."
 {¶ 23} Thus, the commentary to the uniform act, upon which R.C. 3115.07
is based, expresses a clear intention for an issuing tribunal to lose its continuing, exclusive jurisdiction once the obligor, the obligee, and the children subject to the child support have permanently left the issuing state. Other jurisdictions that have considered this issue have followed this interpretation of UIFSA. See, e.g., McHale v. McHale (Ariz.App. 2005), 109 P.3d 89; 447 Ariz. Adv. Rep. 3; Metz v. Metz (2003),69 P.3d 1128, 31 Kan. App.2d 623; Etter v. Etter (Okla.Ct.App. 2001), 18 P.3d 1088, 1091, 2001 Ok. Civ. App. 18. See, also, Jurado v.Brashear (2001), 782 So. 2d 575, 580 (Holding that by virtue of Louisiana's version of UIFSA, the trial court lost continuing, exclusive jurisdiction, and, therefore, lost personal jurisdiction over the out of state obligor when the obligee and the children subsequently moved to Ohio.)
 {¶ 24} Based upon the foregoing, we conclude that, pursuant to R.C. 3115.07, the trial court lacked the requisite subject matter jurisdiction to hear Father's motion to modify child support. Having found that the trial court lacked subject matter jurisdiction to hear Father's motions for contempt and modification of his child support obligation, we reverse the judgment of the trial court, and remand this cause with instructions to dismiss Father's motions pursuant to Civ. R. 12(H)(3).
Judgment reversed, and cause remanded with instructions.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE REVERSED and the cause remanded to the trial court with instructions to dismiss the action and that appellant recover of appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Meigs County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J. and Harsha, J.: Concur in Judgment and Opinion.
[1] On January 10, 2005, the Ohio General Assembly approved Sub. S.B. No. 185, Ohio's version of the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), effective April 11, 2005. Because Father filed his motions before the effective date of the UCCJEA, and that statutory scheme does not expressly state that it is to be applied retroactively, we apply the UCCJA here. See, R.C. 1.48.
[2] We note that Mother presents no argument that the trial court lacked subject matter jurisdiction over Father's motion to modify child support. R.C. 3109.21(B) expressly excludes decisions relating to child support or other monetary obligations from the definition of a "parenting determination."
[3] In their briefs, both Mother and Father acknowledge that there is a separate parenting action pending in a Pennsylvania court, although Mother suggests that the Pennsylvania court has stayed its proceeding pending the resolution of this appeal. The record does not reflect when the Pennsylvania proceeding was initiated or whether the trial court had any knowledge of its existence at the time it ruled upon Father's motions.
[4] R.C. 3115.48 permits an Ohio tribunal to modify a child support order issued in another state if the order has been registered in Ohio, and after notice and hearing, the tribunal finds either: (1) the child, the individual oblige, and the obligor subject to the support order do not reside in the issuing state, the petitioner who is a nonresident of this state seeks modification, and the respondent is subject to the personal jurisdiction of this state; or (2) the child or a party who is an individual, is subject to the personal jurisdiction of the tribunal and all of the parties who are individuals have filed written consents in the issuing tribunal for a tribunal of this state to modify the support order and assume continuing, exclusive jurisdiction over the order.